SUTRO TUNNEL COMPANY, a Nevada Corporation, Appellant, v. WILLIAM F. LIPSCOMB; ANN E. LIPSCOMB; WILLIAM F. LIPSCOMB and ANN E. LIPSCOMB, Husband and Wife, As Joint Tenants, Respondents.

No. 15750

June 20, 1986                              720 P.2d 1204

---

*Michael W. Dyer* and *Victor L. McDonald,* Carson City, for Appellant.

*McDonald, Carano, Wilson, Bergin, Frankovich & Hicks* and *William A.S. Magrath, II,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Appellant acquired title to lots 26, 27 and the west 125 feet of lot 25, block 5, range C, Town of Gold Hill, Storey County, Nevada, in 1932. The deed was properly recorded in the Storey County Recorder's Office.

In 1943, the Storey County Assessor's Office mistakenly changed the assessment notice by changing the range designation from range C to range O. All tax notices to appellant after that date contained the erroneous property description. The correct property description, however, also remained on the assessment roll.

Appellant continued to receive assessment notices, and continued to pay taxes on the subject property until 1981. However, because of the misdescription, the payments were not credited against the taxes due on the subject property. Thus, the records reflected that the taxes had become delinquent between 1943 and 1960. Therefore, the treasurer of Storey County sold the property at a tax sale on May 31, 1960. Respondents' predecessor in interest purchased the subject property at that tax sale.

From 1960 to 1981, the subject property was assessed under the improper description to appellant, and under the proper description to respondents and their predecessors in interest. Both appellant and respondents paid the taxes assessed.

In 1979, the assessor's office committed a second error by changing the block description from 5 to 1. This apparently occurred because there was no block 5 in range O, but there was a block 1. Appellant was not informed of this change.

Because of the county's errors, the assessment received by appellant for the subject property improperly described the property as lots 26, 27 and the west 125 feet of lot 25, block 1, range O, Town of Gold Hill, Storey County, Nevada (instead of the proper description of block 5, range C). Coincidentally, in addition to the property that is the subject matter of this dispute, appellant also owned property in block 1, range O, Town of Gold Hill, Storey County, Nevada. On reviewing its records, appellant did not realize that it was not receiving a proper assessment for block 5, range C. Instead, appellant thought it was receiving two assessments for the property located in block 1, range O. Thus, in 1981, appellant informed the Storey County Board of Equalization of the assumed duplicate assessment, and the assessment for the subject property with the improper description was deleted from the assessment roll. Appellant then stopped paying taxes on the subject property.

Shortly thereafter, appellant discovered that respondents asserted an interest in the subject property. Appellant then commenced an action in the district court seeking to quiet title to the subject property. Respondents answered, claiming ownership to the property by virtue of a tax deed and, alternatively, by adverse possession. The district court quieted title in favor of respondents by virtue of the tax deed, and this appeal followed.

Appellant contends that the county failed to provide it with notice of the county's intention to sell the property to recover the alleged tax delinquency. This, according to appellant, resulted in a taking of appellant's property without due process of law. Appellant argues correctly that if actual notice of the sale was not given to appellant, the tax sale was void, and respondents' predecessor in interest took no interest in the property at the sale. *See* Bogart v. Lathrop, 90 Nev. 230, 523 P.2d 838 (1974); *see also* Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983).

At trial, James Schryver, president of appellant Sutro Tunnel Company since 1960, testified that appellant was never notified of a tax sale of its property. John Flannagan, the Storey County Assessor at the time of trial, also testified that the county had no records showing that actual notice of the sale was given to appellant. However, Flannagan surmised that notice of the sale had been given by publication. In addition, minutes of a meeting of the commissioners of Storey County, at which the 1960 sale was reported, indicated that notice of the sale was given by

publication. The district court rejected this evidence as insufficient to demonstrate whether actual notice had been given to appellant.

In the absence of affirmative evidence to show that actual notice of the sale had not been given, the district court decided that pursuant to NRS 47.250(9)[1] and NRS 361.590(6),[2] it would presume that notice had been given. The district court then concluded that appellant's cause of action was barred by the statute of limitations contained in NRS 361.600.[3] In this conclusion, the district court erred.

We have held that the curative provisions of NRS 361.590 and NRS 361.600 are not effective to cure a jurisdictional defect such as the failure to provide a taxpayer the minimum notice required by due process of law. *See* Bogart v. Lathrop, 90 Nev. 230, 523 P.2d 838 (1974). Therefore, appellant's cause of action is barred by the statute of limitations only if appellant was given notice of the tax sale of its property. In this case, our review of the record reveals no evidence to support the conclusion that appellant was given proper notice of the tax sale. Further, the presumptions set forth in NRS 47.250(9) and NRS 361.590(6) are inadequate, under the circumstances of this case, to provide a basis for finding that actual notice of the sale was given to appellant. In relevant part, NRS 361.590(6) provides:

[1]NRS 47.250 provides in relevant part:

All other presumptions are disputable. The following are of that kind:

. . .

9.  That official duty has been regularly performed.

[2]NRS 361.590(6) provides:

6.  No tax assessed upon any property, or sale therefor, may be held invalid by any court of this state on account of:

(a) Any irregularity in any assessment;

(b) Any assessment or tax roll not having been made or proceeding had within the time required by law; or

(c) Any other irregularity, informality, omission, mistake or want of any matter of form or substance in any proceedings which the legislature might have dispensed with in the first place if it had seen fit so to do, and that does not affect the substantial property rights of persons whose property is taxed.

All such proceedings in assessing and levying taxes, and sale and conveyance therefor, must be presumed by all the courts of this state to be legal until the contrary is shown affirmatively.

[3]NRS 361.600, as it existed on May 31, 1960, provided:

No action or counterclaim for the recovery of lands sold for taxes shall lie unless the same be brought or interposed within 3 years after the execution and delivery of the deed therefor by the county treasurer, any law to the contrary notwithstanding.

All such proceedings in assessing and levying taxes, and in the sale and conveyance therefor, must be presumed by all the courts of this state to be legal until the contrary is shown affirmatively.

The district court construed this statute as placing a burden on appellant to demonstrate affirmatively that no notice was given of the tax sale. Such a burden would be impossible to satisfy in a great majority of cases. Records may indicate the sending of notice; however, records will seldom exist indicating that no notice was sent. Consequently, the district court's construction of NRS 361.590(6) would result in a taking of property without due process of law in many cases where the claimant could not affirmatively demonstrate that no notice was given. The legislature certainly did not intend such a result.

A closer reading of NRS 361.590(6) reveals that the statute does not specifically require affirmative evidence of notice. Instead, NRS 361.590(6) requires affirmative evidence that the assessment and levying of taxes was illegal, or that the sale or conveyance of property to satisfy a tax debt was illegal. In this case, the evidence clearly shows that the taxes were not properly or legally assessed, and that the property was illegally sold as a result of an error made by the county assessor's office. Therefore, the presumption of NRS 361.590(6) was rebutted by affirmative evidence, and the district court erred in relying on the presumption. Similarly, the general presumption created by NRS 47.250(9) that "official duty has been regularly performed" was clearly rebutted in this case by evidence showing the numerous errors committed by the county assessor's office in assessing and selling the property. Assuming, therefore, without deciding, that these presumptions could be relied on in a proper case as a basis for a finding that a jurisdictional requirement had been satisfied, we hold that the district court improperly relied on the presumptions in this case because the presumptions were rebutted.

Appellant's title to the subject property is prior in time to respondents'. Appellant properly recorded its deed to the property in 1932, and continued to pay taxes on the property thereafter. Our review of the record reveals no evidence to support the conclusion that appellant was ever properly divested of the property by the purported tax sale of 1960, which resulted from the errors of the assessor's office. Therefore, the judgment of the district court was erroneous.

Respondents also contended below that they acquired title to the subject property by adverse possession. We conclude, how-

ever, that respondents failed to establish that their possession was hostile, actual, peaceable, open, notorious, continuous and uninterrupted as required to establish a claim of ownership by adverse possession. *See* Brooks v. Jensen, 87 Nev. 174, 483 P.2d 650 (1971); *see also* NRS 11.120.[4] Since acquiring their alleged title to the property, respondents' improvements to the property have been limited to: (1) adding their name to a sign posted at the entrance of the property; (2) regrading and regravelling an existing road on two occasions; and (3) erecting a gate on the property in 1982, after learning of appellant's asserted interest in the property.[5] In light of the fact that respondents own the adjacent parcel which is accessed by the same roadway, these actions did not give notice to appellant of respondents' adverse claim. *Cf.* Rodgers v. Carpenter, 44 Nev. 4, 189 P. 67 (1920) (adverse possessor's actions were sufficient where they gave owner knowledge, or reason to know, that adverse possessor claimed the property as his own). Finally, although respondents and their predecessors in interest have paid taxes on the subject property since 1960, appellant has paid taxes on the property since 1932. A party who in good faith pays all taxes due on his property, and who has no knowledge or reason to know of an adverse claim to his property, cannot be dispossessed of that property by an adverse possessor. *Cf.* NRS 11.150 (requiring claimant to pay taxes on property for a period of five years in order to prevail on a claim of adverse possession on the theory that taxes will be paid only once and that owner who has not paid his taxes may properly be divested of his property). Therefore, as a matter of law, appellant is entitled to judgment on respondents' claim of ownership by adverse possession. Accordingly, we reverse the judgment of the district court, and we remand this case for the entry of judgment quieting title in favor of appellant.

---

[4]NRS 11.120 provides:

For the purpose of constituting adverse possession by any person claiming a title, founded upon a written instrument or judgment or decree, land shall be deemed to have been possessed and occupied in the following cases:
1. Where it has been usually cultivated or improved.
2. Where it has been protected by a substantial inclosure.
3. Where, though not inclosed, it has been used for the supply of fuel, or of fencing timber, for the purpose of husbandry; or for the use of pasturage, or for ordinary uses of the occupant.
4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated.

[5]When respondents erected the gate, appellant immediately informed respondents that it did not object to the gate so long as appellant was not denied access to the subject property.